IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JEFFREY CROSLEN,  )
  )
    Plaintiff,  )
  )
v.  )   CASE NO. CV414-143
  )
CHIEF CHARLES G. MIDDLETON,  )
individually and in his  )
official capacity as Fire  )
Chief of Savannah, and MAYOR  )
AND ALDERMEN OF THE CITY OF  )
SAVANNAH,  )
  )
    Defendants.  )
  )

## O R D E R

Before the Court are Defendants Charles Middleton and the City of Savannah's Motion for Summary Judgment (Doc. 29), and Plaintiff's Motion to Dismiss Judicial Estoppel Affirmative Defense (Doc. 23). For the following reasons, Defendants' motion is **GRANTED IN PART** and Plaintiff's motion is **DENIED**. Plaintiff is **JUDICIALLY ESTOPPED** from seeking monetary damages in this case. In addition, Plaintiff's 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims based on the 2010 and 2011 failures to promote are **DISMISSED**. Defendants are **DIRECTED** to file within forty-five days from the date of this order a supplemental motion for summary judgment that addresses the remainder of Plaintiff's claims. Defendants should specifically address

Plaintiff's entitlement to non-monetary relief in this case. The normal briefing schedule for responses shall apply.

## BACKGROUND

This case involves allegations of race discrimination against Defendant Middleton—Fire Chief of the City of Savannah Fire Department ("SFD")—based on his failure to promote Plaintiff to Training Captain, Battalion Chief, or Assistant Fire Chief. Plaintiff, an African-American, started his employment with the SFD on July 9, 1983, rising to the rank of Fire Captain on February 24, 1995. (Doc. 37 at 2.) Since that time, Plaintiff has not received any further promotion. (Id.) According to Plaintiff, Defendant Middleton has repeatedly declined to promote Plaintiff, instead elevating individuals with less experience and education. (Id.)

Defendant Middleton, also an African-American male, began his tenure as Fire Chief of SFD in August 2006. (Doc. 29, Attach. 1 at 1.) In September 2006, Plaintiff was not selected for the position of Battalion Chief. (Doc. 37 at 7.) Plaintiff claims that the three available positions were filled by less experienced and less qualified individuals, in this instance two white males and one African-American male. (Doc. 38, Ex. 4.) Because he was not

2

promoted, Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on March 2, 2007. (Doc. 37 at 7.) Plaintiff alleged that he was not selected, in part, based on his involvement in a previous investigation concerning allegations of racial discrimination made by a fellow employee. (Id.)

While Plaintiff's March 2007 charge was pending, he applied for another promotion to Battalion Chief. (Id.) In September 2007, five individuals were promoted to Battalion Chief. However, Plaintiff was not among these individuals despite having more experience and higher assessment scores. (Id. at 8-9.) Because he was not selected, Plaintiff informed the City of Savannah Human Resources Department ("SHRD") on October 4, 2007 that he was working in a hostile work environment and was being retaliated against for earlier complaints of discrimination. (Id. at 9.)

Soon after the EEOC issued Plaintiff notice of his right to sue regarding the March 2007 charge, SHRD held a meeting concerning his October 4, 2007 complaints. (Id.) This meeting included Plaintiff, Defendant Middleton, SHRD Administrator Jan Harman, and Battalion Chiefs Butler and Bragg. (Id.) At this meeting, Plaintiff expressed his

concerns about what he perceived to be unfair discrimination concerning promotional opportunities and the existence of an institutional system of discrimination. (Id.) Plaintiff informed the attendees that "discrimination existed and that he would continue to fight for everyone." (Id.) Unsatisfied with their responses, Plaintiff requested that the City Manager be informed of Plaintiff's concerns. (Id. at 10.) Defendant Middleton denied that request. (Id.) Based on these events, Plaintiff filed a second charge of discrimination with the EEOC on December 5, 2007. (Id.) In this charge, Plaintiff alleged that he was disciplined and passed over for the September 2007 promotions in retaliation for opposing discriminatory employment practices. (Doc. 38, Ex. 5.)

While the December 2007 charge was pending, the Savannah-Chatham Metro Police Department ("SCMPD") arrested Plaintiff in November 2008, and charged him with child cruelty and battery based on an altercation between Plaintiff and his son. (Doc. 29, Attach. 1 at 1.) As a result, Defendants suspended Plaintiff with pay on November 18, 2008 and terminated his employment in December 2008. (Id. at 1-2.) Plaintiff appealed to the City Manager, who upheld the termination. (Id. at 2.) In July 2009, Plaintiff was reinstated after successfully appealing to the City of

4

Savannah Civil Service Board. (Id.) According to Plaintiff, Defendant Middleton's decision to terminate Plaintiff's employment was simply retaliation for Plaintiff's earlier complaints of discrimination. (Doc. 37 at 11-18.)

Plaintiff filed a third EEOC charge on June 3, 2010. This charge alleged that Plaintiff was denied a promotion in March 2010 to Training Captain in retaliation for his 2007 EEOC charges. (Doc. 37 at 19-20.) Plaintiff again maintained that he was more qualified than the two individuals selected for promotion, one African-American male and one white male. (Id. at 20.) During the investigation, Training Chief Albert Wright stated that Plaintiff was not selected for promotion because Training Chief Wright

> had a sincere desire to initiate a cultural change within the organization and was concerned about how the Training Division would be perceived with three African American males and one Caucasian female. [Training Chief Wright] wanted the Training Division to project the image of being racially balanced, so [he] recommended to Chief Middleton that [they] assign the third captain of a different ethnic background. In this recommendation [Training Chief Wright] was hoping to avoid any misrepresentation within the organization.
>
> The individual selected was . . . hired with Savannah Fire & Emergency Services on February 2, 2000 and has never had a complaint of employment discrimination since he has been employed with the bureau.

5

(Doc. 38, Ex. 10 at 9.) Based on this statement, Plaintiff amended his June 2010 charge to also include an allegation of racial discrimination in addition to retaliation. (Doc. 37 at 21-22.)

Following its investigation, the EEOC determined that there was "reasonable cause to conclude the [Plaintiff] was discriminated against because of his race and in retaliation for having engaged in a protected activity." (Doc. 38, Ex. 10 at 35.) The EEOC invited Defendants to engage in conciliation to resolve this matter. (Id. at 37.) However, Defendants declined the EEOC's offer. (Id.)

Due to the unsuccessful attempt at conciliation, the EEOC forwarded the matter to the Department of Justice ("DOJ") for the possible filing of civil claims against Defendants. (Id. at 38.) The DOJ undertook its own investigation. (Id. at 39-40.) Ultimately, the DOJ declined to file a civil complaint against Defendants and sent Plaintiff a Notice of Right to Sue on March 31, 2014. (Id. at 54.)

Meanwhile, Plaintiff filed a fourth EEOC charge on July 11, 2011. (Doc. 37 at 24.) In this charge, Defendant again alleged that he was not promoted to Battalion Chief in June 2011 due to his race and age, and in retaliation for filing the previous EEOC charges. (Doc. 38, Ex. 11 at

1.) Plaintiff continued to maintain that he was more qualified than the five individuals selected for promotion, which included three white males, one white female, and one African-American male. (Id. at 4.) Following its investigation, the EEOC concluded on April 17, 2013 that there was reasonable cause to believe Plaintiff was denied promotion to Battalion Chief in retaliation for his earlier EEOC charges, but not because of his race. (Id. at 47.)

Plaintiff filed a fifth EEOC charge on October 24, 2013. (Doc. 37 at 30.) In this charge, Plaintiff alleged that he was denied opportunities to interview for the positions of Assistant Fire Chief and Battalion Chief due to his race and age, and in retaliation for filing the previous EEOC charges. (Doc. 38, Ex. 12 at 1.) As usual, Plaintiff alleged that he was "the most qualified candidate based on merit and qualifications." (Id.) Defendant Middleton selected two white males for those positions. (Id.) Following an investigation, the EEOC again issued Plaintiff a Notice of Right to Sue.

The Court will not individually discuss the events of each EEOC investigation. In general, Defendants maintained that Plaintiff was not selected for promotion because those selected were better candidates based on characteristics other than experience and education. Moreover, Defendant

7

Middleton and other high ranking employees in the Fire Department just did not want Plaintiff in a leadership role because they simply did not trust him.

This disdain by Defendant Middleton and others appears to be based on Plaintiff's relentless campaign accusing them of engaging in wrongdoing regarding Plaintiff's 2008 termination. On December 22, 2009, Plaintiff submitted a letter to the Savannah City Council purporting to file charges of misconduct against Defendant Middleton, Chief Stanley Mosley, and City Manager Michael Brown. (Doc. 29, Attach. 1 at 2.) Plaintiff also informed City Council that a culture of dishonesty had taken root in the Fire Department upon Defendant Middleton's arrival. (Id.) After Plaintiff was turned down for promotion in 2011, Plaintiff's wife contacted SCMPD Chief Lovett and accused Defendant Middleton, City Manager Brown, and SHRD Director Beth Robinson of committing, knowing of, or ignoring various felonies and misdemeanors. (Id. at 4.) Plaintiff sent a similar letter to Chief Lovett, the Chatham County District Attorney, and the Attorney General for the State of Georgia. (Id.) In his letter, Plaintiff alleged that Defendant Middleton, City Manager Brown, and SHRD Director Robinson either committed or failed to investigate the commission of various criminal violations of sixteen

different statutes. (Id.) Unsurprisingly, all of the alleged violations related to Plaintiff's 2008 termination.

Plaintiff and his wife went so far as to personally appear at a local police precinct and attempt to file criminal charges against these individuals. (Id. at 5.) Plaintiff even requested investigations by the Georgia Bureau of Investigation, district attorney, and attorney general's office. (Id. at 4-5.) Unsatisfied, Plaintiff sent a letter to the Federal Bureau of Investigation on April 10, 2013 accusing Defendant Middleton and others of public corruption. (Id. at 6.)

One more event is material to this case: Plaintiff declared bankruptcy during the period his employment was terminated. (Doc. 37 at 19.) On January 15, 2009, Plaintiff and his wife filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Georgia. (Doc. 29, Attach. 1 at 8.) Plaintiff was represented by counsel during the bankruptcy proceedings. In re Croslen, 09-40088-LWD (Bankr. S.D. Ga. filed Jan. 15, 2009). In the petition, Plaintiff failed to list as an asset any claims for discrimination or retaliation. On June 26, 2009, the bankruptcy court confirmed Plaintiff's bankruptcy plan. (Doc. 29, Attach. 1 at 8.) On April 4, 2014, Plaintiff's remaining unsecured debt in the amount of

$82,874.86 was discharged. The bankruptcy trustee filed his final report and account on June 13, 2014, and the bankruptcy court closed this case on July 18, 2014. At no point during the pendency of the plan did Plaintiff amend his schedule of assets to include any claims for discrimination or retaliation.

On July 2, 2014, less than 3 months after his debt was discharged, Plaintiff filed a complaint in this Court. (Doc. 1.) In his complaint, Plaintiff alleges that Defendant Middleton's decision not to promote Plaintiff to Training Captain in 2010, Battalion Chief in 2011, and Battalion Chief or Assistant Chief in 2013 was the result of racial discrimination and retaliation for his earlier EEOC charges. (Id.) Based on this alleged conduct, Plaintiff brought a claim against Defendant City of Savannah for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. (Id. ¶¶ 25-26.) Plaintiff's complaint also includes claims against both Defendants for racial discrimination and retaliation in violation of 42 U.S.C. § 1981 (id. ¶ 28) and 42 U.S.C. § 1983 (id. ¶ 27).[1]

---

[1] Plaintiff's complaint also includes claims for violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and Georgia Whistle Blower Statute, O.C.G.A. § 45-1-4. (Doc. 1 ¶¶ 29-30.) Plaintiff, however,

10

On October 15, 2015, Plaintiff filed a Motion to Dismiss Defendant's Judicial Estoppel Affirmative Defense. (Doc. 23.) In that motion, Plaintiff argues the general inapplicability of that defense to this case. (Id.) In response, Defendants contend that Plaintiff is estopped from seeking monetary damages in this case because he failed to amend his schedule of assets during the pendency of his bankruptcy petition to include the claims now contained in his complaint. (Doc. 24 at 5-11.)

On November 30, 2015, Defendants filed a Motion for Summary Judgment. (Doc. 29.) In their motion, Defendants repeat their argument that Plaintiff is estopped from obtaining monetary damages in this case. (Doc. 29, Attach. 1 at 9-11.) Defendants also contend that Plaintiff's § 1981 and § 1983 claims based on the 2010 and 2011 failures to promote are barred by the two-year statute of limitations (id. at 12-14), and that Defendant Middleton is entitled to qualified immunity with respect to the 2013 failure to promote claim (id. at 14-16). Finally, Defendants argue that Plaintiff has failed to establish a prima facie case

---

expressly abandoned the age discrimination claim (Doc. 37 at 49) and failed to respond to Defendants' request for summary judgment on the whistle blower claim. Accordingly, these claims are **DISMISSED**. See S.D.L.R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.").

11

of either discrimination or retaliation, and that Defendants have legitimate nondiscriminatory reasons for not promoting Plaintiff. (Id. at 16-22.)

In response, Plaintiff maintains that he is not estopped from seeking monetary damages in this case. (Doc. 37 at 35-38.) Also, Plaintiff argues that his § 1981 and § 1983 claims are not barred by the statute of limitations (id. at 48), and that Defendant Middleton is not entitled to qualified immunity (id.). Finally, Plaintiff contends that he has established prima facie cases of discrimination for all his claims, and that Defendants' legitimate nondiscriminatory reasons are mere pretext. (Id. at 38-47.)

**ANALYSIS**

I. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant.

Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. JUDICIAL ESTOPPEL

The doctrine of judicial estoppel operates to preclude a party from asserting positions in legal proceedings that are inconsistent with a position taken in a prior proceeding. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). The purpose of judicial estoppel " 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). When deciding whether to apply judicial estoppel, the Court looks at five factors: (1) whether the present position is clearly inconsistent with an earlier position; (2) whether

the earlier position was accepted by another tribunal; (3) whether an unfair advantage falls to the party currently advancing the inconsistent position; (4) whether the earlier inconsistent position was made under oath; and (5) whether the inconsistencies were "calculated to make a mockery of the judicial system". D'Antignac v. Deere & Co., 604 F. App'x 875, 878 (11th Cir. 2015) (internal quotations omitted).

The only factor at issue in this case is whether Plaintiff's failure to amend his schedule of assets establishes the necessary intent to make a mockery of the judicial system. (Doc. 37 at 36-37.) Judicial estoppel is applicable where a party makes intentional contradictions, not just errors or inadvertent omissions. Burnes, 291 F.3d at 1286. The Court is permitted to infer from the record deliberate or intentional manipulation of the judicial system. Id. The Eleventh Circuit Court of Appeals has concluded that a debtor's failure to amend his schedule of assets is inadvertent where the debtor lacks either knowledge of the claims or motive to conceal them. Id.

In this case, it is clear that Plaintiff had knowledge of his potential discrimination and retaliation claims during the pendency of his bankruptcy petition. Indeed, Plaintiff offers no argument to the contrary. Moreover,

15

there is ample evidence in the record supporting the conclusion that Plaintiff had motive to conceal those claims. Plaintiff ultimately had $82,874.86 of unsecured debt discharged in bankruptcy. That amount would have been considerably less, or his petition dismissed in its entirety, had his creditors, the trustee, or the court known of the existence of legal claims that could result in the recovery of considerable funds. See DeLeon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) ("[A] financial motive to secret assets exists under Chapter 13 . . . because the hiding of assets affects the amount to be discounted and repaid."). Instead, Plaintiff paid his unsecured creditors pennies on the dollar. Finally, Plaintiff filed this suit a mere eighty-nine days after having his debt discharged and only sixteen days prior to the closure of his bankruptcy case.

In short, Plaintiff both knew of his potentially valuable legal claims and had the requisite motive to keep them concealed. Having carefully considered the record, the Court infers that Plaintiff intended to manipulate the judicial system.[2] As a result, Plaintiff is judicially

---

[2] While not a specifically enumerated factor, the Court also notes that Plaintiff retained counsel in both his Chapter 13 bankruptcy proceedings and this case. In the Court's view, Plaintiff's representation by counsel strengthens the

estopped from seeking monetary damages in this case. Therefore, Defendants' are entitled to summary judgment with respect to Plaintiff's claims for monetary damages.

III. <u>STATUTE OF LIMITATIONS FOR CLAIMS BROUGHT UNDER 42 U.S.C. § 1981 AND 42 U.S.C. § 1983</u>

In their Motion for Summary Judgment, Defendants contend that Plaintiff's 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims based on the 2010 and 2011 failures to promote are barred by a two-year statute of limitations. (Doc. 29, Attach. 1 at 12-14). Claims brought under these statutes are tort claims subject to the statute of limitations governing personal injury claims for the state in which they have been brought. See <u>McNair v. Allen</u>, 515 F.3d 1168, 1173 (11th Cir. 2008) (claims brought under § 1983); <u>Hill v. Metro. Atlanta Rapid Transit Auth.</u>, 841 F.2d 1533, 1545-46 (11th Cir. 1988). In Georgia, § 1981 and § 1983 claims are subject to the two-year statute of limitations period contained in O.C.G.A. § 9-3-33. See <u>Porter v. Ray</u>, 461 F.3d 1315, 1323 (11th Cir. 2006); <u>Hill</u>, 841 F.2d at 1545-46.

---

inference that Plaintiff intentionally concealed his discrimination and retaliation claims because he can no longer rely on his unfamiliarity with legal proceedings. See <u>Burnes</u>, 291 F.3d at 1286 (noting that the enumerated factors are not exhaustive and that "courts must always give due consideration to all of the circumstances of a particular case").

17

Plaintiff filed his complaint on July 2, 2014. (Doc. 1.) Therefore, Plaintiff's § 1981 or § 1983 claims based on the 2010 and 2011 failures to promote are barred by the statute of limitations because they accrued prior to July 2, 2012. Accordingly, Defendants are entitled to summary judgment with respect to those claims.

**CONCLUSION**

For the above reasons, Defendants' Motion for Summary Judgment (Doc. 29) is **GRANTED IN PART** and Plaintiff's Motion to Dismiss Judicial Estoppel Affirmative Defense (Doc. 23) is **DENIED**. Plaintiff is **JUDICIALLY ESTOPPED** from seeking monetary damages in this case. In addition, Plaintiff's 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims based on the 2010 and 2011 failures to promote are **DISMISSED**. Defendants are **DIRECTED** to file within forty-five days from the date of this order a supplemental motion for summary judgment that addresses the remainder of Plaintiff's claims. Defendants should specifically address Plaintiff's entitlement to non-monetary relief in this case. The normal briefing schedule for responses and replies shall apply.

The parties should be aware that the Court will not accept any filing that incorporates by reference any portion of an earlier filing. Defendants' supplement motion

and Plaintiff's response should be stand-alone filings that independently contain all the arguments the parties wish the Court to consider. In addition, the Court feels compelled to suggest that counsel for Plaintiff spend more time reviewing his work product before submitting it to the Court. The number of typographical errors and misspellings in Plaintiff's response were somewhat appalling and on a scale rarely seen by this Court. While the Court always endeavors to reach the correct conclusion, this type of disorganized and error riddled writing has the potential to distract the Court and undermine the effectiveness of counsel's argument. All involved, including both this Court and Plaintiff, stand to benefit should Plaintiff's counsel extend a little more effort in this regard.

SO ORDERED this 28th day of September 2016.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA